**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| EMILY R.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | Case No. 2:26-cv-00075-DFM<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff Emily R. seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits, and supplemental security income. See Dkt. 1. The Commissioner filed the certified administrative record. See Dkt. 8-1 ("AR"). The matter is fully briefed. See Dkt. 18 ("Pl. Br."); Dkt. 20 ("Def. Br."); Dkt. 21 ("Reply").

For the reasons set forth below, the Commissioner's decision is **REVERSED**, this matter is **REMANDED** for further administrative

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

proceedings, and Plaintiff's request for an immediate award of benefits is **DENIED**.

## II. BACKGROUND

Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income on January 16, 2023, alleging disability beginning January 1, 2023. See AR 21, 223-26. The claims were denied initially and on reconsideration. See AR 21, 116-24, 131-42. An Administrative Law Judge ("ALJ") held a telephonic hearing on December 11, 2024, at which Plaintiff, her mother, and a vocational expert testified, see AR 37-69, and issued an unfavorable decision on January 29, 2025, see AR 21-31. The Appeals Council denied review on December 4, 2025. See AR 1-6. Plaintiff filed this action on January 5, 2026. See Dkt. 1.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). He first found that Plaintiff met the insured-status requirements of the Social Security Act through March 31, 2024. See AR 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. See id. At step two, the ALJ found that Plaintiff had the medically determinable impairments of "Albright hereditary osteodystrophy, congenital bladder exstrophy, hypothyroidism, Hashimoto's thyroiditis, low vision in the right eye, and autism spectrum disorder." AR 23-24. He found, however, that none of these impairments, "considered singly and in combination," significantly limited Plaintiff's ability to perform basic work activities. See AR 24-30. As to Plaintiff's mental impairment, he rated the "paragraph B" criteria as reflecting no limitation in any of the four functional areas. See AR 29-30.

Because he found no severe impairment or combination of impairments, the ALJ did not proceed to step three, did not assess Plaintiff's residual

functional capacity ("RFC"), and made no findings at steps four or five. He concluded that Plaintiff had not been under a disability from January 1, 2023, through the date of the decision. See AR 30-31.

## III. LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based on legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). Under the substantial evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102-03 (2019) (cleaned up). In this context, "substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 103 (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 103, 108. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred in finding her congenital bladder exstrophy not severe, both in his evaluation of the medical evidence and in his failure to address her mother's testimony. See Pl. Br. at 6-22; Reply at 2-5.[2]

[2] Plaintiff also states in passing that her autism spectrum disorder more than minimally affects her functioning. See Pl. Br. at 6, 9; Reply at 4. But as the Commissioner argues, see Def. Br. at 3 n.1, she identifies no error in the ALJ's evaluation of that impairment or of the other impairments listed at step two. Accordingly, the Court does not reach it. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an ALJ finding because claimant "failed to argue this issue with any specificity in his briefing").

## A. Plaintiff's Mother's Testimony

### 1. Applicable Law

At step two, the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments that is severe and meets the duration requirement. See 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1522(a), 416.922(a). Step two is "a de minimis screening device [used] to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). Once a claimant presents evidence of a severe impairment, the ALJ may find it nonsevere "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Glanden v. Kijakazi, 86 F.4th 838, 844 (9th Cir. 2023) (citation omitted). An inconclusive medical record precludes denial at step two. See id.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Comm'r, SSA, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony "cannot be disregarded without comment." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted), superseded on other grounds by 20 C.F.R. § 404.1502(a). The 2017 revisions to the agency's regulations did not abrogate the requirement that an ALJ give germane reasons for discounting competent lay testimony. See Fain v. Bisignano, --- F.4th ---, 2026 WL 2795427, at *5-6 (9th Cir. Sept. 18, 2026). That requirement "is not onerous," and an ALJ may, for example, rely on a conflict between the lay testimony and a more persuasive medical opinion. See id. at *6 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)). But "[a] lack of support from medical records is not a

germane reason" to discount a lay witness's observations. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017).

The failure to give germane reasons "can be harmless, but it is an error nonetheless." Fain, 2026 WL 2795427, at *5 (citing Molina, 674 F.3d at 1114-15, 1122). The court "look[s] at the record as a whole to determine whether the error alters the outcome of the case," Molina, 674 F.3d at 1115, and the party attacking the agency's determination ordinarily bears the burden of showing that an error was harmful, see Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Where an ALJ fails to discuss competent lay testimony favorable to the claimant, a reviewing court "cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Fain, 2026 WL 2795427, at *6 (concluding ALJ's failure to consider claimant's partner's statements was not harmless when they were relevant to claimant's ability to work).

**2. The Record and the ALJ's Findings**

Plaintiff was born with bladder exstrophy. She underwent bladder repair in infancy and a later bladder augmentation using bowel tissue, and a "monte-type stoma" was created in her umbilicus "with a small tract, accommodat[ing] 8 French in size only." AR 349, 358. She self-catheterizes through the stoma every four hours and does not catheterize for seven hours overnight. See AR 349-50, 358, 468, 514, 518. The narrow channel has at times made catheterization difficult, and Plaintiff has at times left the catheter in place for up to two hours to dilate the channel. See AR 350, 358. She has a history of recurrent urinary tract infections and manages her condition with daily distilled-water bladder irrigation and a daily prophylactic half-tablet of Augmentin. See AR 349-50, 358, 468.

In November 2022, the urology nurse practitioner recorded that Plaintiff let the catheter drain for eight to ten minutes and had "a lot less urinary leaking with her more stringent catheter timing." AR 350. She wore a safety pad "just in case," using one to three a day, and the pad was "usually dry"; she was "more prone to leak if [she] forgets to catheterize or has a lot of fluids." Id. In June 2023, renal ultrasound showed mild to moderate bilateral hydronephrosis, and the regimen was continued. See AR 468. In December 2023, Plaintiff was "[d]oing well" with "[n]o recent UTIs." AR 518. In June 2024, the urologist recorded that Plaintiff was "[a]ble to cath ok, not having any current issues and is emptying successfully" and that her "[u]rinary sx are well-stabilized with prophylactic Augmentin." AR 514. In an April 2023 agency questionnaire, Plaintiff wrote that she empties her bladder "with a catheter every 4 hrs" and that "[i]t takes 10-15 min." AR 287.

The consultative examiner, Barbara Callahan, M.D., examined Plaintiff in June 2023. See AR 454-59. Plaintiff reported that she empties her urinary conduit "about every four hours as necessary and has done this without complications." AR 455. Dr. Callahan described the bladder reconstruction as having "functioned well without any complications" and found Plaintiff "without exertional limitation" and with "no manipulative, postural, visual, communicative or workplace environment limitations." AR 459. Her report records Plaintiff's four-hour catheterization routine, see AR 455, but does not expressly assess additional fluid-dependent catheterizations or their effect on restroom access or time off task, see AR 459. At the initial level, State agency consultant B. Harris, M.D., found "no evidence of physical restrictions secondary to a congenital urinary disorder" and assessed Plaintiff's physical impairments as nonsevere. AR 101; see AR 76. On reconsideration in 2024, K. Munzni, M.D., noted that Plaintiff "[s]elf catheterizes" and has "frequent

UTIs but none of severity to limit functionally," and found her "[p]hysically nonsevere." AR 101-03, 106.

After the hearing, Plaintiff submitted a December 2024 "Bladder Problem Medical Source Statement," which the ALJ attributed to Plaintiff's primary care physician, Ruth Sorotzkin, M.D. See AR 638-42. The statement lists Plaintiff's symptoms as chronic UTIs and the need to "self catheterize through stoma every 4 hours." AR 639. It reports urinary frequency "every 4 hours or more" and incontinence that "depends on fluid intake." AR 640. It opines that Plaintiff needs ready access to a restroom; unscheduled restroom breaks every two to four hours, each lasting fifteen to twenty minutes; and time to clean up and change clothes zero to one times a day. See AR 641. It also assesses limits on sitting, standing, walking, and lifting, and concludes that Plaintiff would be off task twenty-five percent or more of the workday and absent about four days a month. See AR 640-42.

The ALJ found that Plaintiff's bladder condition had been "stable and managed, conservatively via antibiotic therapy, routine monitoring, self-catheterization, and bladder irrigation." AR 25-26 (citing AR 514). He found Dr. Callahan's assessment and the State agency consultants' nonseverity findings persuasive, relying on their consistency with one another, on the generally benign physical examination findings of normal strength, reflexes, and range of motion, and on the absence of complications requiring urgent or emergent care. See AR 27-28. He found Dr. Sorotzkin's statement unpersuasive because she identified no clinical findings supporting her ratings, because the ratings appeared to rest largely on Plaintiff's self-report, and because they were inconsistent with the absence of urgent or emergent treatment. See AR 28. He declined to adopt the "unscheduled breaks, off task, and absenteeism provisions." AR 28-29.

At the hearing, Plaintiff's mother testified that Plaintiff's bladder condition "[i]s an ongoing thing" and that "[s]he has to take a break for it takes her 15 20 minutes every four hours." AR 61. She added that "if she does it correctly, it takes a good 10 15 minutes" and that the usual schedule is about 8, 12, 4, and 8. AR 62. Asked whether Plaintiff must catheterize more often when she drinks more water, the mother answered that she might, and, asked how often, stated: "Well, she might have to go one hour later or she might have to go two hours later." AR 62-63. She explained that "it starts to leak, she has to wear something to absorb the leak and when that happens that now she has to go again." AR 63. Asked whether there would be an additional catheterization between 8 and 12, she answered, "There might be, yes." Id. When the representative turned to Plaintiff's infections, the ALJ stated that such questions "would have been much better put to the claimant" and invited the representative to recall Plaintiff. Id. The representative did not do so. See AR 63-64. The ALJ's decision does not mention the mother's testimony.

**3. Analysis**

The ALJ erred. Plaintiff's mother testified from personal observation, and the ALJ gave no reason, germane or otherwise, for disregarding her testimony. Plaintiff's age, and the ALJ's comment at the hearing that questions about her medical conditions were better directed to Plaintiff, see AR 63, do not supply such a reason. The Commissioner does not contend otherwise, arguing instead that the ALJ properly rejected Dr. Sorotzkin's restroom-break opinion, that the record was adequately developed, and that the urology records and vocational testimony show that Plaintiff's catheterization is compatible with ordinary breaks. See Def. Br. at 8-9.

The error was not harmless. Much of the mother's account was already before the ALJ. Plaintiff's questionnaire described catheterization every four hours taking ten to fifteen minutes, see AR 287, and Dr. Sorotzkin's statement

described unscheduled breaks every two to four hours lasting fifteen to twenty minutes, see AR 641. Had the mother's testimony stopped there, the error likely would have been harmless. Cf. Molina, 674 F.3d at 1122 (finding ALJ's failure to explain her reasons for rejecting lay witness's testimony harmless because it did not describe any limitations beyond those claimant herself described). But it did not.

The mother also described additional catheterizations prompted by increased fluid intake, which "might" be needed "one hour later" or "two hours later." AR 63. Read in context, as an answer to how often Plaintiff must catheterize when she drinks more, that testimony describes a catheterization as soon as one to two hours after the previous one. That interval is shorter than the four-hour routine Plaintiff described, see AR 287, and the one-hour possibility is shorter than the two-to-four-hour interval in Dr. Sorotzkin's statement, see AR 641. Like the lay testimony in Fain, the mother's account supplied a relevant detail about Plaintiff's symptoms that no other evidence the ALJ addressed described. See 2026 WL 2795427, at *6 ("Claimant's partner's statements included relevant details about Claimant's symptoms that Claimant did not mention during her hearing before the ALJ.").

Nor do the reasons the ALJ gave elsewhere suffice. First, the medical assessments he credited do not expressly address it. Dr. Callahan recorded Plaintiff's four-hour catheterization routine, see AR 455, but did not assess additional fluid-dependent catheterizations or their effect on restroom access or time off task, see AR 459. Dr. Munzni acknowledged Plaintiff's self-catheterization, but his statement that her "frequent UTIs" were "none of severity to limit functionally" addresses her infections. AR 101-02.

Second, the ALJ's reasons for rejecting Dr. Sorotzkin's statement do not transfer to the mother's observations. The absence of supporting clinical findings and the apparent reliance on Plaintiff's self-report go to the medical

source's opinion. "A lack of support from medical records is not a germane reason" to discount a lay witness's observations. Diedrich, 874 F.3d at 640. The lack of urgent or emergent treatment does not resolve how often a person with a surgically augmented bladder must catheterize. And Dr. Sorotzkin's statement itself identified fluid-dependent incontinence as a source of additional restroom needs, see AR 640-41, the same issue the mother described.

Third, the treatment records on which the ALJ relied corroborate rather than contradict the mother's account. They show that Plaintiff was "emptying successfully" with no "current issues," AR 514, and that her safety pad was "usually dry" and she leaked less with stringent catheter timing, AR 350. But the same November 2022 record states that Plaintiff is "more prone to leak if [she] forgets to catheterize or has a lot of fluids." Id. That is the circumstance the mother described. Evidence that Plaintiff's routine generally succeeds is consistent with occasional additional catheterizations when she drinks more. The ALJ made no finding that such catheterizations are too infrequent to matter, and the Court cannot make one in his place. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) ("[W]e can affirm the agency's decision to deny benefits only on the grounds invoked by the agency."). The Commissioner's reliance on the vocational expert's testimony about customary breaks, see Def. Br. at 9, fails for the same reason. The ALJ adopted no RFC and made no finding that Plaintiff's catheterization could be accommodated within customary breaks.

The remaining question is whether the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056. It cannot. Fully credited, the mother's testimony describes catheterizations taking fifteen to twenty minutes every four hours, plus additional catheterizations that

may be needed within one to two hours when Plaintiff drinks more. At step two, the question is not whether those demands are disabling but whether the evidence clearly establishes that they have no more than a minimal effect on Plaintiff's ability to work. See Glanden, 86 F.4th at 844-45. A reasonable ALJ crediting the testimony could find that Plaintiff's bladder condition satisfies the step-two severity threshold, or could find the effect of her catheterization regimen too uncertain to resolve against her at step two. See id.

Remand is warranted on this claim of error.

**B. Remedy**

Because remand is warranted on this basis, the Court does not decide whether the ALJ's evaluation of Dr. Sorotzkin's statement independently requires remand, or whether the ALJ failed to develop the record by curtailing the mother's testimony. See Pl. Br. at 9-17. On remand, the ALJ should address the mother's testimony and reconsider the severity of Plaintiff's bladder condition in light of that testimony and the record as a whole, including Dr. Sorotzkin's statement, further developing the record as he finds appropriate. The Court expresses no view on how those questions should be resolved.

An immediate award of benefits is not warranted because the mother's testimony bears on whether Plaintiff's bladder condition is severe but would not require a finding of disability. Further proceedings would serve a useful purpose, and the present record does not require a finding of disability. See Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

///

///

///

///

///

## V. ORDER

Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this action for further administrative proceedings consistent with this Memorandum Opinion and Order under sentence four of 42 U.S.C. § 405(g).

Date: September 29, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge